KUPHAL, RESPONDENT, *v.* WESTERN MONTANA FLOURING
CO. ET AL., APPELLANTS.

(No. 2,947.)

(Submitted February 3, 1911.   Decided February 25, 1911.)

[114 Pac. 122.]

*Master and Servant—Personal Injuries—Dangerous Machinery—*
*Minors—Duty to Warn—Jury Question—Assumption of Risk*
*—Instructions — Pleading — Negligence — Willful Conduct—*
*Surplusage.*

Master and Servant—Injuries to Servant—Warning Servant.
1.   Where a minor operating a ripsaw knew that it was a dangerous
machine, and that if he came in contact with it he would be injured,
it was not necessary to give him instructions on such points.

Same—Injuries to Servant—Questions for Jury.
2.   Ordinarily, it is the function of the jury to say whether a minor
servant comprehended the work in such a sense as to absolve the em-
ployer from the obligation to instruct him.

Same—Warning Servant.
3.   Notice of danger is not enough,. but a servant of immature age
must have sufficient instruction to ·enable him to avoid the danger.

. Same.
4.   In an action for injuries to a minor operating a ripsaw, the ques-
tion whether defendant was negligent in not sufficiently warning the
servant of the danger, *held* for the jury.

Same.
5.   The reason for warning a servant is either to impart to him knowl-
edge that he does not possess, or to impress upon him the necessity
of bearing in mind the danger.

Same—Assumption of Risk.
6.   A minor assumes ordinary risks of any employment which he under-
takes in so far as the risks are, or ought to have been, known to and
appreciated by him.

Same.   .
7.   Where a master negligently omits to instruct a minor servant, he
does not assume those risks as to which instructions are necessary.

Same—Injuries to Servant.
8.   In an action for injuries to a minor servant operating a ripsaw,
·plaintiff *held* not guilty of contributory negligence.

Same—Instructions.
9.   In an action for injuries to a minor servant injured while operating
a ripsaw, defendant requested an instruction that no duty rests on the
master to warn and instruct youthful servants of ordinary risks and
dangers which the servant actually knows and appreciates, or which are
so open and apparent that one of his capacity would, under like circum-
stances, by the exercise of ordinary care, know and appreciate, and that
if plaintiff knew and understood the dangers of operating the saw and
the dangerous character of the appliance, and had received sufficient

instruction, he could not recover, which instruction was given, with the additional statement that the jury should consider the age and experience of plaintiff and all the surrounding circumstances, including the instructions given him, together with his knowledge of the dangers, latent or patent, and then find as a matter of fact whether the master knew, or in the exercise of ordinary care should have known, that the servant required additional warnings or precautionary instructions to enable him, if he heeded them, to avoid the dangers, and should in the exercise of ordinary care have instructed him accordingly. *Held,* that the instruction was correct.

Pleading—Surplusage.

10. Where, in an action for injuries to a servant, the complaint charged ordinary negligence, and did not as a matter of fact charge willful conduct, the words "reckless" and "wanton" were properly treated as surplusage, and a demurrer to the complaint, on the ground that it could not be determined therefrom whether the action was for simple negligence or for wanton or willful negligence, was properly overruled.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Herbert Kuphal, by F. W. Kuphal, his guardian *ad litem,* against the Western Montana Flouring Company and another. From a judgment in favor of plaintiff, and an order denying them a new trial, defendants appeal. Affirmed.

*Mr. W. M. Bickford, Mr. Geo. F. Shelton, Mr. John M. Evans,* and *Mr. John J. Marquette* submitted a brief in behalf of Appellants. *Mr. Bickford* and *Mr. Marquette* argued the cause orally.

It is well settled that the duty of the master to warn and instruct a young and inexperienced servant applies only to the dangers which he knows, or which he, as an ordinarily prudent man, has reason to believe are not known to the servant, and will not be discovered by him in time to protect himself from injury. (*Yeager* v. *Burlington,* 93 Iowa, 1, 61 N. W. 215; *Newbury* v. *Getchel* etc., 100 Iowa, 141, 62 Am. St. Rep. 582, 69 N. W. 743; *Stuart* v. *West End R. R.,* 163 Mass. 391, 40 N. E. 180; *Smith* v. *Irwin,* 51 N. J. L. 507, 14 Am. St. Rep. 699, 18 Atl. 852; *Beckham* v. *Hillier,* 47 N. J. L. 12.) No duty rests upon a master to warn and instruct even a youthful servant of the ordinary risks and dangers of the employment which the servant actually knows and appreciates, or which are so open and apparent that one of his age and capacity would, under like circumstances,

by the exercise of ordinary care, know and appreciate them. (*Strattner* v. *Wilmington El. Co.,* 3 Penne. (Del.) 245, 50 Atl. 57; *Jones* v. *Roberts,* 57 Ill. App. 56; *Bessey* v. *Newichawanick Co.,* 94 Me. 61, 46 Atl. 806; *Downey* v. *Sawyer,* 157 Mass. 418, 32 N. E. 654; *Truntle* v. *North Star Woolen Mill Co.,* 57 Minn. 52, 58 N. W. 832; *Crown* v. *Orr,* 140 N. Y. 450, 35 N. E. 648; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Mitchell* v. *Boston & Mont. Co.,* 37 Mont. 575, 97 Pac. 1033; *Worthington* v. *Goforth,* 124 Ala. 656, 26 South. 531; *Fones* v. *Phillips,* 39 Ark. 17, 43 Am. Rep. 264; *Fries* v. *American Lead Pencil Co.,* 141 Cal. 610, 75 Pac. 164; *Bibb Mfg. Co.* v. *Taylor,* 95 Ga. 615, 23 S. E. 188; *Kolb* v. *Chicago Stamping Co.,* 33 Ill. App. 488; *Brazil Coal Co.* v. *Cain,* 98 Ind. 282; *Atlas Engine Works* v. *Randall,* 100 Ind. 293, 50 Am. Rep. 798; *Pittsburg R. Co.* v. *Adams,* 105 Ind. 151, 5 N. E. 187; *Toledo R. Co.* v. *Trimble,* 8 Ind. App. 333, 35 N. E. 716; *Rood* v. *Lawrence Mfg. Co.,* 155 Mass. 590, 30 N. E. 174; *Palmer* v. *Harrison,* 57 Mich. 182, 23 N. W. 624; *Wolski* v. *Knapp-Stout Co.,* 90 Wis. 178, 63 N. W. 87.)

Where a minor is familiar with the machine, and its character and operation are obvious, and he is aware of and fully appreciates the danger to be apprehended from working the machine, the fact that he is a minor does not alter the rule that the employee takes upon himself the risks which are patent and incident to the employment. (*Buckley* v. *Gutta Percha Co.,* 113 N. Y. 540, 21 N. E. 717; *Hickey* v. *Taffe,* 105 N. Y. 26, 12 N. E. 287.) So in the case of a minor who has been instructed as to the dangers incident to his employment, all ordinary and obvious risks are assumed by him. (*Groth* v. *Thomann,* 110 Wis. 488, 86 N. W. 180; *Jones* v. *Roberts,* 57 Ill. App. 56; *Fones* v. *Phillips,* 39 Ark. 17, 43 Am. Rep. 264; *Pratt* v. *Prouty,* 153 Mass. 333, 26 N. E. 1002; *Tinkham* v. *Sawyer,* 153 Mass. 485, 27 N. E. 6; *Gardner* v. *Cohannet,* 165 Mass. 507, 43 N. E. 294; *Greenwald* v. *Marquette Co.,* 49 Mich. 197, 13 N. W. 513; *Ludwig* v. *Pillsbury,* 35 Minn. 256, 28 N. W. 505; *Jenson* v. *Will & Finck Co.,* 150 Cal. 398, 89 Pac. 113; *Cudahy Packing Co.* v. *Marcan,* 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258.)

The injuries were caused by the contributory negligence of respondent. In this behalf the following rule is submitted: While it is true that the law makes allowances for the thoughtlessness of youth, all the recent cases go to the effect that where it appears plaintiff is a bright and intelligent youth, and, both knowing and understanding the danger incident to his act, nevertheless encounters it, his negligence should be declared as a matter of law under the rule which obtains in respect to persons *sui juris.* (*Herdt* v. *Koenig,* 137 Mo. App. 589, 119 S. W. 56; *Stegmann* v. *Gerber,* 146 Mo. App. 104, 123 S. W. 1041; *Littlejohn* v. *Central R. Co.,* 74 Ga. 396; *Bigelow* v. *Danielson,* 102 Wis. 470, 78 N. W. 599; *Silvia* v. *Sagamore Mfg. Co.,* 177 Mass. 476, 59 N. E. 73; *Morewood Co.* v. *Smith,* 25 Ind. App. 264, 57 N. E. 199.)

*Messrs. Hall & Patterson* submitted a brief in behalf of Respondent. Oral argument by *Mr. John E. Patterson.*

MR. JUSTICE SMITH delivered the opinion of the court.

The following statement of the issues tendered by the complaint is taken from the brief of counsel for the appellants: It is therein charged that Kuphal, a minor, was employed by the defendant corporation as a carpenter apprentice; that he was without previous experience in the operation of machinery, and when he had worked for but three days the defendants carelessly and negligently directed him to operate a ripsaw, a dangerous machine; that to order him to run said saw was not only careless and negligent conduct, but was wanton and reckless; that he was not suitably warned and instructed, and the defendants carelessly, negligently, wantonly, and recklessly put him at said work without suitably warning and instructing him; that, through the said alleged negligent acts of the defendants, he, in attempting to run and operate the saw, severed the thumb and forefinger from his left hand. The answer, after admitting the employment, denied the alleged acts of negligence, and as affirmative defenses pleaded contributory negligence on the part of plaintiff and assumption of risk. The cause was tried to the district court

of Missoula county sitting with a jury. Plaintiff had a verdict and judgment for $2,500 damages. From the judgment and an order denying a new trial defendants have appealed.

Plaintiff testified that on April 11, 1907, he was nearly seventeen years of age. Mr. Goslee, the foreman, employed him on that day to do carpenter work. After working at that employment for three days, Goslee told him to go to the ripsaw and rip out some pulley slats. He had never done such work before. While standing by the ripsaw, Mr. Otto Swant, a cutter, came and asked him how he was getting on. He further testified: "Swant took one board and showed me how to rip it and then showed me another way. The way I took was what I thought was the easiest. When he showed me he told me to be sure and keep my hand on the piece that was between the saw and the gauge, and I was intent on holding that, and I never paid any attention to my left hand until—he put two boards through, first he showed me there, just one hand on the whole piece, by pushing the board clear through so when one strip came out with the board he held in his hand, he knocked that strip in a pile on one side. Another way he took hold his left hand onto this strip that was coming off and pushed it through, and, as soon as it was through, with his left hand he pushed up these into the scrap pile. He told me mostly to keep my hand on this piece, for the other would hold if it is close to the saw, might be caught by that saw and thrown back. He told me, where he worked in the east, a young fellow in the east, one of these pieces was thrown back and hit him and he died. Just as I pushed the board through, I felt a kind of thud. I was intent on holding that when I started in to rip. I saw to it that my left hand was clear, and just as I got past I felt a kind of thud and let go and jumped backward. My fingers were gone, I really don't know what happened. The way Swant did it it looked really easy, did not require any effort on his part. He was looking at me more than the piece while he was ripping, while he was telling me. When I pushed the board through, I was surprised it went so easy. I being used to ripping with the handsaw so it took quite an effort, but this here went through without any effort on my part. I was

surprised at the lack of resistance. It went through faster than I expected it would. I thought I had some talent for carpenter work; that was my bent, so to speak. I had used carpenters' tools and made some little things at the manual training school. Mr. Goslee did not tell me to go to Mr. Swant, just told me to go to rip the boards. I knew that if my fingers caught on that saw when it was revolving there it would cut them, but I did not think about cutting fingers at that time; I never had the slightest idea. I knew that, in order to avoid injury, it was necessary to keep my hand away from the saw. I knew that if my hand touched the saw it would injure it; but I was intent on holding that piece of board down. I was watching the saw. I was watching my right hand. Mr. Swant explained to me; he told me mostly; what he impressed on my mind was about that piece between the saw and the gauge, is what he impressed mostly. I was intent on holding that board more than anything else. It was not necessary for him to tell me if I caught my hand on that saw it was going to cut. I took that for granted. I knew that in order to avoid injury to my hand I must keep it off that revolving saw, but that strip was so narrow on the left-hand side that just putting your fingers on would naturally bring it close. If you cannot watch your hand, it will come closer to that saw than you think it is. It was my intention to keep my hands away from the saw. I did not want to get hurt. Swant showed me another way to rip, not requiring your left hand at all. The saw does not come toward you; you move toward the saw. I don't know about that saw not being perfectly stationary, because I never knew what to look for about the saw down there then; if I had known anything about it, I would have started ripping before Swant came. I returned to work on July 1, 1907, and worked about eighteen months. After Swant ran two boards through I took what I thought was the easiest way, using both hands to run the board through. They did not explain to me that it was much more dangerous when you had a narrow strip than it would be if you had a wider one. I was not told how easy the board would go through, how little resistance there would be. I was told that I might get hurt by the board on the right side;

that is, by the use of the gauge, if I did not hold that down it might fly and hurt me.   There was no warning given me of any other danger.''

Otto Swant testified: ''Mr. Goslee, the boss, told me to go and show the boy how to rip that stuff.   I found him over by the saw, and I ripped off three or four pieces for him and showed him how to do the work; then I let him; but he did not finish ripping the first one he attempted, for he cut his fingers.   I was there three or four minutes before he was hurt while I told him, tried to make him realize everything that I could in that length of time.   The very first board he put through was the one by which he got hurt.   I told the boy that it was pretty dangerous work for him to tackle; told him that I would show him how, and I did.   I showed him how to take hold of the board and how to push it through.   I cautioned him the best I knew how, showed him how to take hold of the board, and told him about it being dangerous, that the board might fly up, and I told him to push the board beyond the saw; but when he got hurt he left the board sticking in it, in between the saw and the gauge.   We were both in danger of being hit at that time, so I ran up and pushed the board over between the gauge and the saw.   I showed him everything I thought I could show him without letting him do it myself.   I don't know whether he made any answers when I was instructing him or not.   The machinery was making a lot of noise; I don't remember.   I would take hold of a board just this way and run it through, pass both of my hands beyond; showed him how to do it that way, and then said, 'Take your edging off and pull the board around this way.'   I told him to take a hold of the board with his hand so that the saw would pass in between his both hands, and then said: 'You push it through until you get away on five, and then push the edging off the table, and then pull your board around the saw; never pull it up this way.   If you let go of it, it will hit you.'   When I explained to him about the dangers of the machine, I told him to be very careful of himself, to look out for himself, and not to mind the machine.   I told him at that time it was pretty dangerous work

to put a boy at; that is what I said. I told him it was pretty dangerous work to put a boy of his age at.''

Plaintiff here closed his case in chief, and the defendants interposed a motion for a nonsuit, which was overruled. Error is assigned upon the ruling; but we shall not consider it, for the reason that the plaintiff's case was very materially supplemented by the defendant Goslee while upon the witness-stand. He said: ''I told Herbert he was not to go to the machines; he was instructed to keep away from them. I did not at that time or at any other time direct him to take lumber to the ripsaw and rip it. He had no instruction to rip it. I did not at any time before this injury instruct or direct the boy to run the ripsaw; I might have a year later. On this particular occasion I told him to take it to the machineman, I did not tell him to take it to the ripsaw. There were men there whose business it was to use those saws. I did not instruct the boy that he was to rip the lumber. I gave him to understand he was to keep away from the machine. There was a man there to run the machine, and I supposed he would take it to him. I said to him to take it to the machineman. I did not say to him at that time that he would have to learn to run a machine if he was going to work there. I knew that a ripsaw was a dangerous machine, inasmuch as every machine in a working institution is dangerous. I told Kuphal not to touch the ripsaw because I did not want him to go to the machine; I had other work for him to do. I foresaw that there was danger in an inexperienced boy working on this ripsaw.'' It will be noted that Goslee did not contradict that part of Swant's testimony wherein he said that Goslee directed him to show the boy how to rip the lumber. In rebuttal, plaintiff denied that Goslee ever told him to keep away from the machine or to take the work to the machineman. At the close of the testimony, defendants moved the court for a directed verdict in their favor; but the motion was overruled.

1. It is contended that there was no negligence on the part of the appellants. We are of opinion, however, that this was a matter for the jury to decide. The ripsaw was an obviously dangerous machine. Kuphal knew this, and knew, also, that if

[1]   he came in contact with it he would be injured.   It was not necessary to give him any information or instruction on either of these two points.   (*Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843; *Mitchell* v. *Boston & Mont. etc. Co.*, 37 Mont. 575, 97 Pac. 1033.)   Even so, the machine was so exceptionally dangerous that the defendant Goslee, according to the testimony of Kuphal and Swant, recognized the necessity of instructing him before he should be allowed to operate it; and according to his own testimony it was so dangerous that the boy ought not to have been allowed to use it at all.   This testimony of Goslee in itself made out a cause of action for the plaintiff, because the jury might believe it and disbelieve his statement that he instructed plaintiff to keep entirely away from the saw.   But we shall examine the other question presented, *i. e.,* whether they were justified in concluding that plaintiff was not sufficiently warned and instructed.   It may perhaps be said that, if it was negligence to allow the boy to operate the machine under any circumstances, it naturally follows that no amount of instruction would be adequate to protect him; but, as the cause was not submitted to the jury on that theory, we shall examine the theory upon which it was submitted.

Ordinarily, it is within the function of the jury to say whether a minor servant comprehended a work in such a sense as to [2]   absolve the employer from the obligation to instruct him; but, if the jury believed the testimony of plaintiff and Swant, they must have concluded that Goslee thought instructions necessary.   The only other question, then, on this branch of the case, is whether they might properly find that reasonable care [3]   was not exercised in instructing him.   Notice of danger is not enough.   An employee of immature age must have sufficient instruction to enable him to avoid the danger.   Whether adequate instructions were given is ordinarily a question for the jury to decide.   As was said in the *Forquer Case, supra:* "The jury should consider the age, experience, or inexperience of the person injured, and all the surrounding circumstances, including the instructions given him, if any, as to what work he should perform and the manner of performing it, together with his knowl-

edge of the dangers, patent or latent, and then determine as a matter of fact whether the master knew, or in the exercise of ordinary care should have known, that the servant required additional warnings, explanations, or precautionary instructions to enable him, if he heeded the same, to avoid the dangers, and should, in the exercise of ordinary care, have instructed him accordingly.'' Swant testified that he gave such instructions as he thought necessary; but he very frankly admitted that he said at the time it was pretty dangerous work at which to put a boy of plaintiff's age. This statement in itself might well justify a jury in believing that the instructions given by Swant could not have been adequate under the circumstances. These two practical and skilled mechanics, Goslee and Swant, recognizing, as they admit, that the ripsaw was an extremely dangerous machine, and particularly so to a youth of no experience, allowed him to attempt its operation after instructions covering a period of but three or four minutes; the burden of such instructions being to pay particular attention to the piece of board ripped off, as it might fly back and injure the operator. Swant's instructions disclose the fact that the proper use of a ripsaw is a somewhat complicated and difficult operation, and this, taken in connection with other testimony of these two witnesses, and the further fact that the boy's fingers were cut off upon his first attempt to operate the machine, might well convince a reasonable man that the instructions given were not sufficient. Let us bear in mind, also, that the boy's fear of injury from a flying piece of lumber was excited by Swant's statement that he had seen a young fellow killed in that way, and that the instructions given were so inadequate that Kuphal neglected to do the very thing that Swant cautioned him to be sure to do; the latter being obliged to push the board through himself. Swant also testified that the noise of the machinery was such that he could not tell whether the boy made any answer to his instructions, and it might reasonably be inferred that the noise also interfered with Kuphal's hearing. It will also be remembered that there was testimony by the plaintiff that certain specified instructions were [4] not given him. In view of the foregoing considerations, we

think the question of defendant's negligence was one of fact for the jury to determine.

2. Again it is said that plaintiff assumed the risk of being injured as he was. The foregoing discussion really disposes of the question, because it establishes the proposition that it was a question of fact for the jury whether the plaintiff was sufficiently instructed to enable him to know and appreciate the danger incident to operating the ripsaw. The reason for warning a [5] servant is either to impart to him knowledge that he does not possess, or to impress upon him the necessity of being careful and bearing in mind the danger. (*Mitchell* v. *Boston & Mont. etc. Co., supra.*) When a jury finds that a minor servant required instructions in order to understand and appreciate a danger, and that such instructions, or adequate instructions, were not given, they find, in effect, that the servant did not assume the risk incident to the employment. The question is not whether he knew the physical conditions, but whether he appreciated the danger—a question of fact. (*Hollingsworth* v. *Davis-Daly Estates C. Co.*, 38 Mont. 143, 99 Pac. 142; *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co., supra; Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29.) A minor [6] assumes the ordinary risks of any employment which he undertakes, in so far as those risks are, or ought to have been, known to and appreciated by him, whether the source of his knowledge be his own observation and experience, or the instructions which he has received from his employer. (1 Labatt on Master and Servant, p. 702.) It is immaterial whether his appreciation of a danger is gained from observation, experience, or instructions. (*Stegmann* v. *Gerber* (St. Louis Ct. of App.), 146 Mo. App. 104, 123 S. W. 1041.) But whereas an adult, in the absence of evidence which justifies an opposite conclusion, is presumed to comprehend the ordinary dangers incident to his employment, in the case of a minor the defense of an assumption of ordinary risks is viewed as one which is merely conditional upon the production of evidence going to show that the risk in question was comprehended. (1 Labatt on Master and Servant, p. 703.) A risk not comprehended by a minor is not assumed.

Mr. Labatt again says (volume 1, page 705) : ''If the master has adequately performed his duty (by means of instruction), recovery by the servant becomes impossible for two reasons: First, because the master is guilty of no negligence in the premises; and, secondly, because a properly instructed minor servant must be taken to have understood the risks to which that instruction related, and, as the presumption of his ignorance of those risks is thus rebutted, his assumption of the risk becomes a necessary inference.'' A corollary of this rule must be that, if the master [7] negligently omits to instruct, the minor servant does not assume those risks as to which instructions are necessary. (See *Jones* v. *Florence Min. Co.*, 66 Wis. 268, 57 Am. Rep. 269, 28 N. W. 207.)

3. What has heretofore been said disposes of appellants' contention that no causal connection was shown between the alleged [8] failure to instruct and the injury to plaintiff. It also disposes of the question of contributory negligence of which it is urged the plaintiff was guilty, and, incidentally, of the contention that the evidence is insufficient to justify the verdict.

4. We think instruction No. 7, given by the court, was a correct statement of the law as applied to the facts in this case. The jury was therein advised that, if they found that plaintiff required instructions, it became the duty of the defendant to give them. This instruction, we think, fairly left the question of the necessity for instructions to the jury, although there was no serious issue on the point in the testimony.

5. Appellants requested the court to give the following instruction: ''The jury are instructed that no duty rests upon the master to warn and instruct the youthful servants of the ordinary risks and dangers of the employment which the servant actually [9] knows and appreciates, or which are so open and apparent that one of his age and capacity and experience would, under like circumstances, by the exercise of ordinary care, know and appreciate; and if the jury find from the evidence that, at the time of the accident in question, the plaintiff knew and understood the dangers of operating the saw, and knew and appreciated the dangerous character of the instrument, and had received

due and sufficient instruction in its operation, then he cannot recover.'' The court gave the instruction after adding thereto the language employed by this court in the *Forquer Case, supra,* and heretofore in this opinion quoted. This was correct for the reasons hereinbefore stated.

6. The last error assigned is that the court erred in overruling a special demurrer to the complaint, interposed for the alleged reason that it cannot be determined therefrom whether plaintiff's cause of action is ''for simple negligence, or for wanton or willful negligence.'' We think the demurrer was properly overruled. As a matter of fact, the complaint does not charge willful conduct. Ordinary negligence is all that is charged. The words ''reckless'' and ''wanton'' [10] were properly treated as surplusage. (*Neary* v. *Northern Pacific Ry. Co.,* 41 Mont. 480, 110 Pac. 226; *Cassidy* v. *Slemons & Booth,* 41 Mont. 426, 109 Pac. 976; *Hoskins* v. *Northern Pacific Ry. Co.,* 39 Mont. 394, 102 Pac. 988; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49; *Raymond* v. *Blancgrass,* 36 Mont. 449, 93 Pac. 648, 15 L. R. A., n. s., 976; *First National Bank* v. *Carroll,* 35 Mont. 302, 88 Pac. 1012; see, also, *Haddox* v. *Northern Pacific Ry. Co., ante,* p. 8, 113 Pac. 1119.)

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 24, 1911.